**United States District Court**
                     **District of Massachusetts**

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
          v.                  )
                              )    Criminal No.
CARLOS LANDAN,                )    07-10407-NMG
                              )
          Defendant.          )
_____)
```

                       **MEMORANDUM & ORDER**

**GORTON, J.**

     One of the defendants in this case, Carlos Landan
("Landan"), is charged with firearm possession and drug offenses.
He has moved to suppress items seized during the search of his
home and statements made to police on the grounds that the search
was conducted without a warrant and without his consent, that the
statements were not preceded by the giving of <u>Miranda</u> warnings
and that any statements made were involuntary.  This Court
conducted an evidentiary hearing on October 30, 2009.

**I.   Background**

     **A.   Factual Background**

     Landan was arrested on the morning of December 7, 2007 in
Haverill, Massachusetts, as part of an investigation by the
Federal Bureau of Investigation's North Shore Gang Task Force
("the FBI Gang Task Force").  The arrest was made pursuant to a
warrant and effectuated by the Massachusetts State Police ("MSP")

                              -1-

Special Tactics and Operations Program ("STOP Team").  That unit was called on because of concerns about Landan's history of violence and, in particular, his prior conviction for assault and battery with a dangerous weapon which involved the near fatal stabbing of an undercover MSP trooper.

At approximately 6:00 a.m. on the morning of the arrest, members of the STOP Team, without knocking or announcing their presence, entered Landan's residence.  Landan was in bed with his girlfriend and the mother of his child, Marisol Crespo ("Crespo").  Police entered the bedroom, arrested Landan and subsequently handcuffed him.  He was then separated from Crespo who was taken to another room in the apartment with some children.

After Landan was arrested and the apartment secured by the STOP Team, Lieutenant Ernest Doherty ("Doherty") of the MSP and Special Agent Darwin Suelen ("Suelen") of the FBI assumed control of the scene.  Doherty testified that he then advised Landan of his Miranda rights and that Landan responded that he understood those rights.  In response to questions, Landan told Doherty that there was cocaine and a gun in the apartment.

Landan was subsequently taken to the living room area. Although no search warrant had been issued for Landan's residence, Doherty testified that he asked Landan if he would consent to a search of the apartment and Landan answered

affirmatively.  According to Doherty, Suelen also showed Landan a
consent to search form and an "advise of rights" form and read
them both to him.  Landan purportedly said that he understood his
rights and consented to a search of the apartment.  After
discussing whether to "un-cuff" Landan so he could sign the
forms, Suelen and Doherty demurred for the sake of officer
safety.  Doherty instead signed both forms as a "witnessing
officer" in the presence of Suelen.

Although he did not testify at the hearing, Landan asserts
in an affidavit that he repeatedly declined to assent to a search
when officers asked for his permission.  The parties do not
dispute, however, that Crespo did orally consent to a search and
sign a consent-to-search form.

The apartment was searched and law enforcement officers
found a firearm, ammunition, cocaine and a scale in a bedroom
closet.  Landan has moved to suppress that evidence as well as
the statements he made to police.

**B.   Procedural History**

Landan was indicted on December 6, 2007 and a Superseding
Indictment was returned on August 14, 2008.  Landan filed the
pending motion to suppress on April 17, 2009, along with an
affidavit and an affidavit of his then-counsel Larry Tipton.  The
government filed an opposition to that motion on May 4, 2009,
along with an affidavit from Doherty.  An evidentiary hearing was

held on October 30, 2009 and the parties subsequently submitted
supplemental memoranda.

## II.  **Analysis**

In moving to suppress physical evidence and statements made
to the police, Landan argues that: 1) the search was conducted
without a warrant and without his consent, 2) he was not given
the required Miranda warnings before he made the statements, 3)
if there was consent or a waiver under Miranda, it was
involuntary and 4) the officers' violation of the "knock and
announce rule", although not mandating suppression, requires some
alternate remedy.  The Court considers those arguments seriatim.

### A.   **Consent to Search Landan's Residence**

#### 1.   **Legal Standard**

Although searches without a warrant are presumptively
unreasonable under the Fourth Amendment, "[c]onsensual searches
are a recognized exception to the Fourth Amendment's warrant
requirement."  United States v. Vanvliet, 542 F.3d 259, 264 (1st
Cir. 2008).  The government bears the burden of proving, by a
preponderance of the evidence, that the defendant gave his
consent voluntarily.

Voluntariness is a question of fact that turns on the
totality of the circumstances attending the interaction between
the defendant and searching officers.  Id.  Consent is not
voluntary if it is either coerced or was granted only in

-4-

submission to a claim of lawful authority.  <u>Schneckloth</u> v.
<u>Bustamonte</u>, 412 U.S. 218, 233 (1973).  Consent is voluntary where
the defendant makes an "essentially free and unconstrained choice
[and his will has not] been overborne and his capacity for
self-determination [not] critically impaired." <u>United States</u> v.
<u>Forbes</u>, 181 F.3d 1, 5 (1st Cir. 1999) (citations and quotations
omitted).

### 2.  Application

It is undisputed that the search of Landan's residence was
not pursuant to a search warrant although the arrest was made
pursuant to a warrant.  Thus, Landan's motion turns first on
whether he consented (as Doherty testified) or objected (as he
contends by affidavit) to the search of the apartment.[1]  For the
government, Doherty both submitted an affidavit and testified
that Landan consented to the search.  He contends that due to a
fear for officer safety, however, Landan was not un-cuffed to
sign the consent form.

Landan rebuts the government's proof by 1) submitting an
affidavit asserting that he continuously refused to allow the
search and 2) seeking, at the evidentiary hearing, to cast doubt

---

[1]  Although the government also maintains that the search
was justified based upon Crespo's written consent, the Court
declines to rely on that assertion because consent by a co-tenant
cannot justify a search if the other tenant refuses, as Landan
alleges here.  <u>See</u> <u>Georgia</u> v. <u>Randolph</u>, 547 U.S. 103, 114-15
(2006).

on Doherty's testimony.  Specifically, he questions the officers'
so-called safety concerns with respect to un-cuffing him under
the circumstances in which 1) several heavily-armed officers were
present in the apartment, 2) his prior stabbing of an officer
(the only basis given for officer safety concerns) was over ten
years prior to his arrest and the victim was acting undercover
and 3) Landan was seated, calm and very cooperative.  Thus, with
no reason to be fearful, Landan contends, reasonable officers
would have had him sign the form.  Their failure to do so
arguably implies that Landan actually withheld his consent.

Although Landan has forcefully questioned the reasonableness
of the decision to keep him handcuffed, the Court finds Doherty's
affidavit and sworn testimony on the witness stand to have been
credible.  See, e.g., United States v. Hemmings, No. 07-cr-
421(NG)(JMA), 2009 WL 1616517, at *6-7 (E.D.N.Y. June 9, 2009)
(finding a testifying officer more credible than the affidavit of
a defendant who chooses not to testify at a suppression hearing
even though he was entitled to do so without the risk that it be
used against him at trial).  Accordingly, the Court finds that,
by a preponderance of the evidence, the government has shown that
Landan gave his consent to search the apartment.

That does not, however, end the inquiry because Landan
contends that, even if the Court finds that he consented to the
search, such consent was involuntary.  He points again to the

circumstances of the arrest, particularly to the presence of many heavily armed officers.  The Court is unpersuaded.  In fact, the circumstances upon which Landan relies as supporting his argument that he did not consent to the search contradict his argument here.  He was calm and cooperative and the fact that armed officers were in the apartment or had roused him from bed moments before does not render involuntary his statements given in a non-confrontational, controlled setting.  Thus, the Court finds that his consent was not unconstitutionally coerced.

**B.    Statements to Police**

**1.    Legal Standard**

The familiar requirements of <u>Miranda</u> v. <u>Arizona</u>, provide that a criminal defendant must be advised of certain rights prior to being subjected to custodial interrogation.  384 U.S. 436, 444 (1966).  Questioning may thereafter proceed only if the defendant makes a voluntary, knowing and intelligent waiver of those rights.  <u>Id.</u>  The government bears the burden of proving a waiver of <u>Miranda</u> by a preponderance of the evidence.  <u>United States</u> v. <u>Downs-Moses</u>, 329 F.3d 253, 267 (1st Cir. 2003).  If the court finds no <u>Miranda</u> violation "then the standard shifts" and only confessions procured by coercive tactics will be excluded.  <u>See</u> <u>id.</u> ("For example, police may not get a <u>Miranda</u> waiver and then beat a confession out of a suspect....").

Here, there is no dispute that the questioning of Landan

after his arrest qualifies as custodial interrogation.  Rather, the issue is identical to that of consent: Doherty's testimony that Landan was advised and read his rights (but not required to sign a form) is disputed by Landan's affidavit.  For the same reasons outlined above, the Court credits Doherty's testimony over Landan's affidavit and, accordingly, finds that the government has demonstrated that <u>Miranda</u> warnings were given.

Landan again urges that his statements should be suppressed because they were the "result of coercion and not voluntarily made" due to the circumstances surrounding the arrest.  The Court reiterates that this argument lacks merit.  The actions taken by police were a far cry from the sort of "physical or psychological pressure" that would justify a finding that Landan's statements were involuntary and not a product of free choice.  <u>See</u> <u>Moran</u>, 475 U.S. at 421; <u>cf.</u> <u>Mincey</u> v. <u>Arizona</u>, 437 U.S. 385, 401 (1978).

### C.   Knock and Announce Violation

In addition to seeking the suppression of physical evidence and statements made to law enforcement, Landan requests a remedy for the officers' alleged violation of the so-called "knock and announce" rule.  Specifically, he seeks a ruling that there was a "knock and announce" violation that should be presented to the jury at trial.

Both the Fourth Amendment and federal law require that, in most circumstances, police officers armed with a warrant must

-8-

knock and announce their presence before entering a suspect's
residence.  See 18 U.S.C. § 3109; Wilson v. Arkansas, 514 U.S.
927, 934 (1995).  Several exceptions to the rule have developed
to relieve officers of that burden where compliance would prove
unhelpful or dangerous.  Officers are not required to knock and
announce their presence

> under circumstances presenting a threat of physical
> violence, or where police officers have reason to believe
> that evidence would likely be destroyed if advance notice
> were given.

Richards v. Wisconsin, 520 U.S. 385, 391 (1997) (citation and
internal quotation marks omitted).

Here, the Court is persuaded by the government's contention
that the failure to knock and announce was justified by a threat
of physical violence to police officers due to Landan's prior
conviction for assault and battery with a deadly weapon in
connection with a near fatal stabbing of a MSP Trooper.  That
criminal history is sufficient to give police a "reasonable
suspicion that knocking and announcing their presence, under the
particular circumstances, would be dangerous."  See Richards, 520
U.S. at 394.  Consequently, the knock and announce rule was not
violated and Landan is entitled to no affirmative remedy.

-9-

**ORDER**

In accordance with the foregoing, the defendant's motion to suppress (Docket No. 64) is **DENIED.**


**So ordered.**

                                        /s/ Nathaniel M. Gorton
                                        Nathaniel M. Gorton
                                        United States District Judge

Dated November 12, 2009